# UNITED STATES DISTRICT COURT
# MIDDLE DISTRICT OF TENNESSEE
# NASHVILLE DIVISION

| | |
|---|---|
| CARLA BRENNER # 443202 ) | |
| aka LAMONDA FULLER, ) | |
| ) | |
| Plaintiff, ) | |
| v. ) | No. 3:11-00307 |
| ) | Judge Haynes/Brown |
| CORRECTIONS CORPORATION ) | |
| OF AMERICA, ET AL., ) | |
| ) | |
| Defendants. ) | |

**To: The Honorable William J. Haynes, Jr., Chief United States District Judge**.

## REPORT AND RECOMMENDATION

For the reasons stated below, the Magistrate Judge **RECOMMENDS** that: 1) the motion for summary judgment filed by the Metropolitan Government of Nashville and Davidson County (METRO) (Doc. 53) be **GRANTED**; 2) the motion for summary judgment filed by Corrections Corporation of America (CCA) (Doc. 46) be **TERMINATED AS MOOT**; 3) this action be **DISMISSED WITH PREJUDICE** as to plaintiff's federal claims; 4) the district **COURT DECLINE TO EXERCISE** supplemental jurisdiction over plaintiff's state law claims; 5) that this action be dismissed **WITHOUT PREJUDICE** as to plaintiff's state law claims; 6) acceptance and adoption of this Report and Recommendation (R&R) constitute the **FINAL JUDGMENT** in this action; 7) any appeal **NOT BE CERTIFIED** as taken in good faith pursuant to 28 U.S.C. § 1915(a)(3).

## I. INTRODUCTION AND BACKGROUND

Plaintiff, proceeding *pro se* and *in forma pauperis*, brought this action under 42 U.S.C. §

1983 on March 31, 2011 alleging violations of her[1] rights under the Eighth Amendment and unspecified state laws. (Doc. 1, ¶ IV, pp. 5 & 5 cont.) Plaintiff was incarcerated in Correctional Development Center Female (CDF) at the time of the alleged events gave rise to this action and in the Criminal Justice Center (CJC) at the time she filed this case in district court. Plaintiff named the Davidson County Sheriff's Office (DCSO), Sheriff Daron Hall, Attorney Fakisha Swander and ten officers at CDF as defendants in her original complaint. (Doc. 1, ¶ III.B, pp. 4 & 4 cont.)

This matter was referred to the Magistrate Judge on June 6, 2011 "to conduct a frivolity hearing on whether this action should proceed . . . ." (Doc. 5) Thereafter, plaintiff filed a motion to amend her complaint on August 5, 2012 which was granted on August 6, 2012. (Docs. 11-12) The court vacated its June 6, 2011 order on August 9, 2012 "[i]n light of Plaintiff securing representation and the filing of the amended complaint." (Doc. 12) The case was then referred to the undersigned "to enter a scheduling order for the management of the case, to dispose or recommend disposition of any pretrial motions under 28 U.S.C. §§ 636(b)(1)(A) and (B), and to conduct further proceedings, if necessary, under Rule 72(b), Fed.R.Civ. P., and the Local Rules of Court." (Doc. 12)

The Magistrate Judge entered an order on August 10, 2012 in which he "note[d] that the amended complaint refer[red] to the original complaint," and instructed counsel "to file . . . prior to the issuance of process, a single complaint naming all defendants that . . . [p]laintiff intends to sue." (Doc. 13, p. 1) Thereafter, counsel filed a single amended complaint on August 31, 2012 in response to the Magistrate Judge's prior order. (Doc. 14)

Plaintiff named CCA and METRO as the only two defendants in her August 31, 2012 amended complaint. (Doc. 14, ¶¶ 2-3, p. 1) Plaintiff alleges in her amended complaint that CCA

---

[1] Plaintiff asserts that she "was born a man . . . but . . . appears, talks, acts, and lives as a woman." (Doc. 11, p. 1) The Magistrate Judge addresses plaintiff in this R&R in accordance with her preferences.

and METRO violated her rights under the Eighth and Fourteenth Amendments (Count I), that their alleged "outrageous conduct" rose to the level of intentional infliction of emotional distress (Count II), and that their alleged actions rose at least to the level of negligent infliction of emotional distress (Count III). (Doc. 14, pp. 5-6)

CCA filed an answer on September 28, 2012. (Doc. 18) CCA asserted multiple affirmative defenses including that "[p]laintiff's claims are barred based upon her failure to exhaust administrative remedies, as required by the Prison Litigation Reform Act, 42 U.S.C. § 1997e." (Doc. 18, p. 5) METRO filed its answer on October 1, 2012. (Doc. 20) METRO also asserted multiple affirmative defenses including that "[p]laintiff did not exhaust the available administrative remedies before this cause of action was brought . . . [and] that this action is barred pursuant to 42 U.S.C.§ 1997e(a)." (Doc. 20, ¶ 14, p. 7)

CCA filed a motion for summary judgment on October 1, 2013. (Doc. 46) CCA argues that it is entitled to summary judgment because: 1) CCA cannot be held liable on a theory of *respondeat superior*; 2) plaintiff's allegations do not give rise to a constitutional violation; 3) plaintiff did not suffer a physical injury. (Doc. 47, ¶¶ III.A-C, pp. 9-32) CCA argues further that, if its motion for summary judgment is granted as to plaintiff's federal claims, then the court should decline to exercise supplemental jurisdiction over plaintiff's state law claims. (Doc. 47, ¶ III.D, pp. 32-33)

METRO also filed a motion for summary judgment on October 1, 2013. (Doc. 53) METRO argues that it is entitled to summary judgment because: 1) plaintiff did not exhaust her administrative remedies prior to bringing this action; 2) METRO is not liable on a theory of *respondeat superior*; 3) plaintiff fails to make a showing of a constitutional violation; 4) plaintiff did not suffer a physical injury;" 5) METRO is immune from liability. (Doc. 57, ¶¶ B-C, E, pp. 7-20) METRO also argues that, if its motion for summary judgment is granted as to plaintiff's federal claims, then the court should decline to exercise supplemental jurisdiction over plaintiff's state law claims. (Doc. 57, ¶

3

D, p. 16)

Plaintiff responded to defendants' motions for summary judgment on December 24, 2013 (Doc. 76) as well as to defendants' statement of facts (Docs. 74-75). CCA filed a reply to plaintiff's response on January 2, 2014. (Doc. 78) METRO filed a reply on January 21, 2014. (Doc. 87) Thereafter, plaintiff filed an amended response to CCA's statement of facts on January 27, 2014. (Doc. 90) CCA did not reply. This matter is now properly before the court.

## II. ANALYSIS

### A. Actions Under § 1983

To state a claim under § 1983, plaintiff must allege and show: 1) that she was deprived of a right secured by the Constitution or laws of the United States; <u>and</u> 2) that the deprivation was caused by a person acting under color of state law. *Parratt v. Taylor*, 451 U.S. 527, 535 (1981)(overruled in part by *Daniels v. Williams*, 474 U.S. 327, 330 (1986)); *Santiago v. Ringle*, 734 F.3d 585, 589 (6th Cir. 2013). A successful § 1983 claimant must establish that the defendant acted knowingly or intentionally to violate her constitutional rights. *Daniels*, 474 U.S. at 333-36; *Flagg v. City of Detroit*, 715 F.3d 165, 174 (6th Cir. 2013); *Ahlers v. Schebil*, 188 F.3d 365, 373 (6th Cir. 1999)(citing *Harlow v. Fitzgerald*, 457 U.S. 800, 815 (1982)).

### B. Summary Judgment

Summary Judgment is appropriate only where "there is no genuine issue as to any material fact . . . and the moving party is entitled to summary judgment as a matter of law." Rule 56(c), Fed. R. Civ. P.; *see Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986); *Newman v. Federal Express Corp.*, 266 F.3d 401, 404-05 (6th Cir. 2001). A "genuine issue of material fact" is a fact which, if proven at trial, could lead a reasonable jury to return a verdict for the non-moving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The moving party has the burden of showing the absence of genuine factual disputes from which a reasonable jury could return a verdict for the non-

4

moving party. *Anderson*, 477 U.S. at 249-50. "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'" *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)(quoting *First Nat. Bank of Arizona v. Cities Servs. Co.*, 391 U.S. 253, 289 (1968)).

In considering whether summary judgment is appropriate, the court must "look beyond the pleadings and assess the proof to determine whether there is a genuine need for trial." *Sowards v. Loudon County*, 203 F.3d 426, 431 (6th Cir. 2000), *cert. denied*, 531 U.S. 875 (2000). If there is a genuine issue of material fact," then summary judgment should be denied. *Sowards*, 203 F.3d at 431. However, "[t]he moving party need not support its motion with evidence disproving the non-moving party's claim, but need only show that 'there is an absence of evidence to support the non-moving party's case.'" *Hayes v. Equitable Energy Resources Co.*, 266 F.3d 560, 566 (6th Cir. 2001)(quoting *Celotex Corp.*, 477 U.S. at 325). "A 'mere scintilla' of evidence, however, is not enough for the non-moving party to withstand summary judgment." *U.S. ex. Rel. Wall v. Circle C Const., L.L.C.*, 697 F.3d 345, 351 (6th Cir. 2012)(quoting *La Quinta Corp. v. Heartland Prop.*, LLC, 603 F.3d 327, 335 (6th Cir. 2010)(citing *Ciminillo v. Streicher*, 434 F.3d 461, 464 (6th Cir. 2006)).

### C. Argument

As previously noted, defendants raise several arguments in their motions for summary judgment. Because exhaustion is a prerequisite under the PLRA for a prisoner to bring a § 1983 action in federal court, the Magistrate Judge will address METRO's exhaustion argument first.[2]

The Prison Litigation Reform Act (PLRA) provides that "'[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner

---

[2] The Magistrate Judge notes up front that, as discussed below, plaintiff admits she did not exhaust the administrative remedies prior to bringing this § 1983 action in district court. The analysis that follows allows the court to put into context plaintiff's belated assertion that she did not exhaust her administrative remedies because she was afraid and intimidated.

confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted.'" *Napier v. Laurel County, Ky.*, 636 F.3d 218, 222 (6th Cir. 2011)(quoting 42 U.S.C. § 1997e(a)). The exhaustion requirement of § 1997e(a) is "mandatory." *Jones v. Bock*, 549 U.S. 199, 211 (2007). "This requirement is a strong one. To further the purposes behind the PLRA, exhaustion is required even if the prisoner subjectively believes the remedy is not available . . . even when the state cannot grant the particular relief requested . . . and 'even where [the prisoners] believe the procedure to be ineffectual or futile . . . .'" *Napier*, 636 F.3d at 222 (citations omitted). To satisfy this exhaustion requirement, "prisoners must 'complete the administrative review process in accordance with the applicable procedural rules,' – rules that are defined not by the PLRA, but by the prison grievance process itself." *Jones*, 549 U.S. at 218 (2007)(quoting *Woodford v. Ngo*, 548 U.S. 81, 88 (2006)). A prisoner-plaintiff also must present her grievance "through one complete round" of the established grievance process. *Thomas v. Woolum*, 337 F.3d 720, 733 (6th Cir. 2003)(overruled in part on other grounds by *Woodford*, 548 U.S. at 81).

The Magistrate Judge turns first to the declaration of Tom Davis – the DCSO Records Manager – filed by METRO. (Doc. 53, Ex. B) Mr. Davis has attached to his declaration a copy of both DCSO Policy 1-3.540 (Inmate Grievances), with an effective date of October 22, 2010, and the DCSO *Inmate Handbook*, with an effective date of July 1, 2010. (Doc. 53, Ex. B, Ex. 1-2) Mr. Davis states that DCSO Policy 1-3.540 was in effect throughout plaintiff's incarceration as was the *Inmate Handbook*. (Doc. 53, Ex. B, ¶ 3, pp. 1-2 of 3)[3]

DCSO Policy 1-3.540 contained the following provisions applicable to the inquiry at hand:

**Filing a Grievance**

---

[3] Under the local rules of court, "[a]ll exhibits to pleadings shall be paginated progressively beginning with the principal document, and continuing through the last page of the documents, including exhibits." LR7.03(a). In those instances where the parties have not complied with LR7.03(a), or have not numbered the pages at all, the court has used the convention p. X of Y, or pp. X-Z of Y, where the pages to which reference is being made are the page numbers assigned by the court's CM/ECF system.

> Inmates may file written grievances . . . . Complaints about specific incidents should be filed within seven days of the incident. Complaints about practices, policies, or conditions of confinement should be filed within seven days of the most recent time the inmate was affected. . . .
>
> **Processing and Responding to Grievances**
>
> . . . . The designated responder will investigate the complaint as needed, take steps to address or remedy legitimate complaints, initiate changes where appropriate, and forward a response to the inmate by the date specified. . . . The responder will provided his/her name and title, and the response should be forwarded to the complainant within seven working days from the time the grievance was entered. . . .
>
> **Appeals**
>
> An inmate dissatisfied with a grievance response may appeal . . . . Appeals should be made within five working days of receiving the response that is being appealed. The grievance coordinator will record the appeal and forward it to the appropriate responder, who will answer it within seven working days. An inmate may only appeal each grievance one time.

(Doc. 53, Ex. B, Ex. 1, pp. 1-2, 4 of 4) The *Inmate Handbook* provides the following instructions with respect to grievances:

> **GRIEVANCES**
>
> If you have a complaint about a jail policy, practice, condition, or employee, ask for a grievance/appeal form, or write it on plain paper with 'GRIEVANCE' across the top in big letters. . . . You have ten days, including holidays and weekends, after the matter/incident you are complaining about arises to file a grievance. . . . You should get an answer within seven working days. If you don't, ask your case manager to check on it for you.
>
> Grievance appeals: If you think the answer to your grievance is unfair, you can appeal to the facility administrator. You must file your appeal within one week of receiving your original response. . . .

(Doc. 53, Ex. B, Ex. 2, p. 2 of 2) The foregoing establishes that DCSO had a published grievance

7

procedure, and that the grievance procedure was covered in the DCSO *Inmate Handbook*. The next question is whether plaintiff was aware of DCSO's grievance procedure.

Plaintiff was "Unable to Admit or Deny" in her response to METRO's statement of facts with respect to Mr. Davis' statements regarding DCSO Policy 1-3.540 and the *Inmate Handbook*. (Doc. 74, ¶ 16, p. 2 of 4) Although plaintiff's testimony at her June 24, 2010 deposition was often evasive and confrontational, she did provide the following relevant testimony about the *Inmate Handbook* and the question of exhaustion before the court:

> Q. When you were processed into the Metro facilities, you received an inmate handbook, didn't you?
>
> A. Yeah, I did.
>
> Q. And it explained in detail the grievance process. Correct?
>
> A. Well, if you've seen one, you've seen them all. I didn't read it.
>
> . . .
>
> Q. . . . . [D]id you have the opportunity to read the grievance –
>
> A. I guess.
>
> Q – procedures in the inmate handbook?
>
> A. I guess I had, yeah.
>
> Q. Do you dispute that at the Davidson County Metropolitan Government's Sheriff's Office facilities that they have a grievance process?
>
> A. I know all facilities has a grievance process. All of them.

(Doc. 60, Ex. C, pp. 20-22 of 53) The testimony above shows that plaintiff received a copy of the *Inmate Handbook* when she first was incarcerated in November 2010, that she was aware DCSO had

8

a grievance procedure, that she knew the *Inmate Handbook* covered DCSO's grievance procedure, and that she had the opportunity to read the procedure.

Mr. Davis states next in his declaration that, based on DCSO's grievance records, plaintiff filed a grievance dated March 5, 2011, and that it was the only grievance she filed. (Doc. 53, Ex. B, ¶ 6, p. 2 of 3) Mr. Davis states further that plaintiff's March 5, 2011 grievance "complained that she had been inappropriately housed in the women's facility and that she would be filing suit." (Doc. 53, Ex. B, ¶ 6, p. 2 of 3) Plaintiff admits that she filed a grievance "on or about March 5, 2011," but denies that it was the only grievance she filed. (Doc. 74, ¶ 19, p. 2 of 4)

Mr. Davis has attached a copy of plaintiff's March 5, 2011 grievance to his declaration. (Doc. 53, Ex. B, Ex. 3) The two narrative parts of plaintiff's March 5, 2011 grievance are quoted below. The first part is written in the section of DAVIDSON COUNTY SHERIFF'S OFFICE INMATE GRIEVANCE FORM ("the grievance form") labeled "Details."

> I was inappropriately housed in The womens Facility on 11-10-2010 till 3-2011 stip searched By Female Officers more than (20) times Today I've Been placed in The mens population without any problems. Im Fileing A Civil law suit against the Sheriff Dept For the neglogence on part of DCSO. I've Forwarded Copies to my Federal attorney's[.]

(Doc. 53, Ex. B, Ex. 3, p. 2 of 4) The following note from plaintiff to Sheriff Hall is attached to the grievance form:

> Dear Sheriff                                                                 3-5-2011
>
> I am Carla Brenner # 443202 I am not sure that you've Been informed That I have Been housed at The DCSF womens jail For (4) months Nov 10, 2010 – March 3, 2011 I am male. I have not undergone a sex change operation. There is neglegence on The Jails part. While I was there A Female sexually Fondled me. That was reported. I was Strip Searched More than (20) times by 'Female Officers.' I was put in The mens [jail] and placed in isolation one nite, am now in population without incident/No problems. I'd like to inForm you That Im filing a civil action for the neglegence The

9

> Sheriff Dept has put upon me. How incompitent can they be? They never Asked me. never exzamined me up until The day I told them I was a man. I Came here frm a Federal medical Center in texas. The Jail Claims it was there Fault for not telling them im male. It was up to nashville to do there Determining where I Should Best Be housed. They Looked at my Outer person And without Hesitation put me with the women. I am 51 yrs old and Could Do without the stress. The Last (4) months caused me tremendous Stress. Please Be Advised you will Hear From my Federal Attorneys regarding this . . . [*sic*].[4]

(Doc. 53, Ex. B, Ex. 3, pp. 3-4 of 4) Plaintiff signed both the grievance form and attached note, dating them both "3-5-2011." (Doc. 53, Ex. B, Ex. 3, pp. 2-3 of 4) A comparison of the narrative sections above with the alleged facts that gave rise to this action shows that plaintiff's March 5, 2011 grievance pertains to those alleged facts.[5] In other words, the record shows that plaintiff filed a grievance pertaining to the events that gave rise to this action.

As previously noted at p. 7, DCSO Policy 1-3.540 and the *Inmate Handbook* both provide that a prisoner will receive a written response to their grievance within "seven working days" of filing their grievance. As previously noted at p. 7, the *Inmate Handbook* also provides that, "[i]f you don't [get an answer within seven working days], ask your case manager to check on it for you."

Given that plaintiff filed her grievance on March 5, 2011, she should have received a response to her grievance on March 15, 2011 – seven working days after filing it. The record shows that plaintiff did not receive a response to her grievance until March 31, 2011. (Doc. 53, Ex. B, Ex. 3, p. 1 of 4) Plaintiff does not allege that she asked her case manager to check on her grievance. Neither does she assert that, having not received a response, she attempted to raise her grievance to the next level of review. Instead, plaintiff signed her complaint in this case on March 21, 2011

---

[4] The last few words of plaintiff's statement attached to her grievance are illegible.

[5] Although plaintiff denied that the grievance above was the <u>only</u> grievance she filed, plaintiff has provided no evidence regarding any other grievance that might be germane to the court's inquiry. Moreover, inasmuch as this grievance pertains to the alleged events that gave rise to this action, plaintiff was not required to have filed another.

(Doc. 1, ¶ IV, p. 6), and mailed it to the district court where it was stamped as having been received on March 30, 2011 (Doc. 1, p. 1). "An inmate cannot simply . . . abandon the process before completion and claim that [s]he has exhausted h[er] remedies." *See Hartsfield v. Vidor*, 199 F.3d 305, 309 (6th Cir. 1999)()(citing *Wright v. Morris*, 111 F.3d 414, 417 n. 3 (6th Cir.), *cert. Denied*, 522 U.S. 906 (1997)).

METRO argues that plaintiff had not received a response to her grievance before she filed her complaint. (Docs. 56, ¶ 24, p. 7; 57, p. 8) Plaintiff admits that she had not. (Doc. 74, ¶ 24, p. 2 of 4) Mr. Davis notes in his declaration that "the grievance records for [plaintiff's] incarceration . . . reveal[s] that she never filed an appeal to any grievance response, including the 'unsustained' response to her March 5, 2011 grievance that concerned how she had been housed." (Doc. 53, Ex. B, ¶ 7, p. 3 of 3) Plaintiff admits that she did not file an appeal with respect to her March 5, 2011 grievance, qualifying her admission by asserting that she had been "threatened with punishment if she continued to make an issue of her male identity and/or disclosed to other inmates or employees that she was a man." (Doc. 74, ¶ 20, p. 2 of 4)

Based on the foregoing, it is obvious that plaintiff did not exhaust her administrative remedies prior to filing her complaint in federal court. The next question is whether plaintiff has provided any evidence of circumstances that might have excused her from complying with the PLRA's exhaustion requirement.

Where, as here, a prisoner-plaintiff contends that she failed to exhaust her administrative remedies because of fear and intimidation, she is required to "describe with specificity" the factual basis for that fear and intimidation. *Boyd v. Corrections Corporation of America*, 380 F.3d 989, 998 (6th Cir. 2004). The Magistrate Judge turns first to plaintiff's pleadings in addressing her allegations of fear and intimidation.

Plaintiff asserts the following in her original complaint: "I was intimidated By officers cursed

11

and The unit I was housed in received punitive lock down on a regular basi[s] caused [her] to be Depressed, Stressed and had considered ending my life During that period at the Women jail . . . ." (Doc. 1, ¶ IV, p. 5)  Plaintiff's reference to "that period at the Women jail" links these alleged actions to the time when she was incarcerated in CDF, not to her time at CJC where, as previously noted, she was incarcerated when she filed her grievance.

Plaintiff asserts the following in her amended complaint: 1) she was "housed in a unit that was placed on 'lock down' on a regular basis, without cause or reason"; 2) she was "subjected to being cursed and verbally abused by the guards on a regular basis, without cause or reason"; 3) she was "goaded and ostracized daily." (Doc. 14, ¶¶ 6.F-G, pp. 3-4)  Once again, these statements refer to plaintiff's incarceration in CDF, not to CJC where she filed her grievance.

The Magistrate Judge turns again to excerpts of plaintiff's June 24, 2013 deposition.  (Doc. 60, Ex. C)  Plaintiff testified at her deposition that she had been "[t]hreatened" and received "[t]hreats" while at CDF.  (Doc. 60, Ex. C, p. 16 of 53)  Plaintiff's further testimony below not only supports the view that all of these alleged events occurred at CDF, not at CJC, but that the conduct alleged was not directed exclusively at her:

> Q. You have got an allegation here about the unit where you were housed being placed on lockdown on a regular basis without cause or reason?
>
> A. Right.
>
> Q. Was that lockdown applicable to all inmates, not just yourself?
>
> A. Right. A lot of it Boss. She would come and just – her and Ruthage.
>
> Q. Were verbal cursing and so forth by the guards, was that something that was directed towards all of the inmates, not just yourself?

>       A.      On some occasions.
>
>       Q.      You said that other prisoners were aware of your male gender, and you were goaded and ostracized daily?
>
>       A.      After I had come back from the men's facility.
>
>                               . . .
>
>       Q.      So did the ostra – did the goading and being ostracized not begin until July?
>
>       A.      Right.
>
>       Q.      And that would have been July of 2011?
>
>       A.      Yes.

(Doc. 60, pp. 44-45 of 53)

The Magistrate Judge turns next to plaintiff's response to METRO's motion for summary judgment, where she makes two statements that are relevant to her failure to exhaust. Citing two paragraphs in her own affidavit, plaintiff states that "the truth is that the reason Carla Brenner did not appeal the March 5, 2011 grievance was that she [was] severely threatened with punishment if she did so," and "[h]aving already been singled out for excessive punishment, [she] took these threats seriously." (Doc. 76, ¶ 2, p. 2 of 5) The two paragraphs in the affidavit to which plaintiff refers are ¶¶ 8-9 which read as follows: 1) "I was threatened with punishment if I pursued an appeal of the grievances denial and/or told anyone that I was a man"; 2) "The reason I did not appeal the grievance was that I was afraid of retaliation by METRO and CCA." (Doc. 76, Ex. A, ¶¶ 8-9, pp. 1-2 of 3) In her response to METRO's statement of facts, plaintiff states – referring to the two paragraphs in her affidavit mentioned above – that she was "threatened with punishment if she continued to make an issue of her male identity and/or disclosed to other inmates or employees that

13

she was a man."[6] (Doc. 74, ¶¶ 19-21, p. 2 of 4) Plaintiff's allegations of threats, punishment, and retaliation in response to METRO's motion for summary judgment not only fail to "describe with specificity" the factual basis for her claims of fear and intimidation, her allegations are utterly devoid of any supporting facts and, as such, they are conclusory. The Magistrate Judge also is struck by the fact that, at the same time plaintiff contends she was too afraid to pursue her grievance, she did not hesitate to file this lawsuit – and tell the Sheriff before hand that she was going to.

For all of the reasons stated above, plaintiff has provided no evidence for having abandoned DCSO's grievance due to alleged threats, punishment, and punishment. Consequently, no grounds exist for excusing her failure to comply with the PLRA's exhaustion requirement.

Ever a creature in search of answers to questions, the Magistrate Judge turns finally to the evidence in the record that reveal plaintiff's real reason for her failure to exhaust. That reason is captured in the following testimony at plaintiff's deposition:

> Q. Do you dispute that at the Davidson County Metropolitan Government's Sheriff's Office facilities that they have a grievance process?
>
> A. I know all facilities has a grievance process. All of them.
>
> Q. And do you – do you know that that process includes one level of appeal before it is exhausted?
>
> A. That's what it says. It's a joke. You would have to be there. It's a joke, all of them.
>
> Q. And you did not file any appeal to any grievance response that you received?
>
> A. What was – what was the sense in it? It didn't – it's

---

[6] As previously noted, plaintiff filed an amended response to defendants' motion for summary judgment. (Doc. 90) However, there is nothing in her amended response that goes to the question of exhaustion.

not going to do anything.

(Doc. 60, Ex. C, p. 22 of 53) Plaintiff's own words above support the conclusion that plaintiff did not exhaust her administrative remedies, not because she was afraid or felt intimidated, but because she viewed the grievance procedure as a "joke," *i.e.*, an exercise in futility. As previously established, there is no futility exception to the PLRA's exhaustion requirement.

## III. CONCLUSION

The evidence shows that plaintiff failed to exhaust her administrative remedies prior to bringing this action in federal court, and that she did not have any justifiable reason for that failure. Under such circumstances, the PLRA requires that this case be dismissed. Although dismissal for failure to exhaust normally is without prejudice, the record shows that plaintiff is no longer in custody of DCSO, that DCSO's grievance procedures are no longer available to her, and that she resides outside the State of Tennessee. Since exhaustion now is impossible, dismissal in this instance should be with prejudice.

## IV. RECOMMENDATION

For the reasons stated above, the Magistrate Judge **RECOMMENDS** that: 1) the motion for summary judgment filed by METRO (Doc. 53) be **GRANTED**; 2) the motion for summary judgment filed by CCA (Doc. 46) be **TERMINATED AS MOOT**; 3) this action be **DISMISSED WITH PREJUDICE** as to plaintiff's federal claims; 4) the district **COURT DECLINE TO EXERCISE** supplemental jurisdiction over plaintiff's state law claims; 5) that this action be dismissed **WITHOUT PREJUDICE** as to plaintiff's state law claims; 6) acceptance and adoption of this R&R constitute the **FINAL JUDGMENT** in this action; 7) any appeal **NOT BE CERTIFIED** as taken in good faith pursuant to 28 U.S.C. § 1915(a)(3).

Under Rule 72(b), Fed. R. Civ. P., any party has fourteen (14) days from service of this R&R within which to file with the District Court any written objections to the proposed findings and

recommendations made herein.  Any party opposing shall have fourteen (14) days from receipt of any objections filed regarding this R&R within which to file a response to said objections.  Failure to file specific objections within fourteen (14) days of receipt of this R&R may constitute a waiver of further appeal of this R&R.  *Thomas v. Arn*, 474 U.S. 140, *reh'g denied*, 474 U.S. 1111 (1986).

      **ENTERED** this the 30th day of July, 2014.

/s/Joe B. Brown
Joe B. Brown
United States Magistrate Judge